# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                                               CR No. 18-2419 JCH

RUEBEN VINCENT MAESTAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' "Motion for Clarification of the Court's Memorandum Opinion and Order (Doc. 42)" (ECF No. 43). The Government seeks clarification as to whether the Court intended to suppress the evidence of eyewitness testimony that Defendant spat on the officer as charged in the indictment. Defendant opposes the motion as moot and procedurally defaulted, asserting that the Government's motion is an attempt to raise arguments for the first time that it waived by not raising before or during the hearing on the motion to suppress. Although the Court agrees that the Government should have raised this issue in its response in the initial briefing, the Court finds good cause to reconsider the scope of its Memorandum Opinion and Order given the holding of *United States v. Waupekenay*, 973 F.2d 1533, 1538 (10th Cir. 1992). The Court will therefore reconsider its prior decision suppressing all evidence, and the Court will not suppress evidence of the separate, independent crime of spitting on Inspector Jose Carrillo committed in the officers' presence after Defendant's illegal detention.

## I. BACKGROUND

Defendant Maestas filed a motion to suppress, arguing that Christopher Sena, a Protective Security Officer ("Sena"), did not have reasonable suspicion that a crime occurred, or in any event, reasonable suspicion that Defendant committed a crime for which Sena had authority or jurisdiction to make an arrest. *See* Def.'s Mot. to Suppress 3-4, ECF No. 35. Defendant also contended in his motion that all evidence following his detention, including DNA evidence and his spitting on law enforcement, was tied directly to his false arrest and was not attenuated from his arrest. *Id.* at 5-7. Consequently, Defendant asserted that his seizure was unconstitutional, and all evidence derived therefrom, including his statements, DNA evidence, and any evidence that he spat on law enforcement, was tainted and must be suppressed. *See id.*

In response, the Government argued there was reasonable suspicion that Defendant committed the federal crime of assault to justify Defendant's detention by Sena and that Sena was authorized to detain and search Defendant. *See* Gov.'s Resp. 9-12, ECF No. 36. The Government also asserted that the fugitive recovery agents and Sena could lawfully detain Defendant under the doctrine of citizen's arrest. *See id.* at 6-9. The Government, however, in its response did not make an attenuation argument or assert that not all evidence must be suppressed as fruit of the poisonous tree. *See id.* at 1-13.

This Court held a hearing on Defendant Maestas's motion to suppress on December 11, 2018. Following the hearing, the Court entered a Memorandum Opinion and Order, in which the Court granted Defendant Maestas' Motion to Suppress after finding and concluding the following:

> Although Sena had reasonable suspicion to believe that Maestas was the person who threw the bottle based on what the security officer told him she witnessed, he did not have reasonable suspicion to believe that throwing the bottle constituted the federal offense of assault….The distance between the bottle and any person in this case, combined with the lack of any interaction between Defendant and anyone in

> the vicinity of the bottle, does not indicate that Defendant threw the bottle in a manner intending to cause anyone serious bodily injury.
>
> Sena therefore lacked reasonable suspicion to believe Defendant committed the federal crime of assault and lacked grounds to lawfully detain Defendant at the time Defendant was forcibly brought to the corner and initially detained. Because Defendant's detention was not justified at its inception, his seizure violated the Fourth Amendment and the evidence derived afterwards, including the threatening statements Defendant made after his unlawful detention, must be suppressed.

Mem. Op. and Order 11-12, ECF No. 42.

After the Court's ruling, the Government filed its motion seeking clarification that the Court's ruling does not prevent the Government from presenting evidence from eyewitnesses that Defendant spat on Inspector Carrillo. For the first time, the Government argued that the fruit of the poisonous tree doctrine does not extend to evidence of the charged assault and cited in support for the first time *United States v. Waupekenay*, 973 F.2d 1533, 1538 (10th Cir. 1992).

In response to the motion for clarification, Defendant argues that this Court granted the motion to suppress, which clearly sought the suppression of all evidence post-detention. Defendant also asserts that the Government raises the issue of attenuation for the first time in the motion for clarification, and thus, the Government waived the issue and waived the development of factual evidence to support any argument regarding attenuation.

## II. ANALYSIS

The Court did not address the attenuation argument in its Memorandum Opinion and Order because the United States had not argued that evidence of the spitting did not need to be suppressed if the Court found the detention illegal. This issue, however, is now squarely before the Court on the Government's motion for clarification.

In the case cited by the Government, *United States v. Waupekenay*, 973 F.2d 1533 (1992), the Tenth Circuit held that, even though police officers did not have consent to enter a trailer,

3

evidence that the occupant pointed a rifle and aimed it at officers after they unlawfully entered the trailer "should not have been suppressed because the defendant-appellee did not have a reasonable expectation of privacy at the time he initiated the assault." *Id.* at 1534. The Tenth Circuit explained that the determinative factor in its fruit-of-the-poisonous-tree inquiry is whether the defendant initiated the attack upon the officers with a legitimate expectation of privacy. *Id.* at 1536. To determine the answer to that question, courts look at (1) whether the defendant by his conduct exhibited an actual, subjective expectation of privacy, in other words, did he show that he sought to preserve his actions as private, and (2) is the subjective expectation of privacy one that society is prepared to recognize as reasonable. *Id.* at 1536-37. The Tenth Circuit concluded that the defendant did not have a reasonable expectation of privacy because he obviously intended for the police to see him aim the weapon at them. *Id.* at 1537.

The circuit noted there are multiple rationales for the limitation of the fruit-of-the-poisonous-tree doctrine in the context of subsequent attacks on law enforcement: a lack of reasonable expectation of privacy; the intervening act is so separate and distinct from the illegal entry or arrest as to break the causal chain; and/or the strong public interest in preventing and punishing force or threats of force directed against police officers. *See id.* at 1538. The Tenth Circuit stated: "However, whatever rationale is used, the result is the same: Evidence of a separate, independent crime initiated against police officers in their presence after an illegal entry or arrest will not be suppressed under the Fourth Amendment." *Id.*

In this case, the evidence at the hearing showed that Defendant Maestas, by his conduct, did not exhibit an actual subjective or reasonable expectation of privacy when he spat on Inspector Carrillo. Defendant Maestas spat on Inspector Carrillo when he was in the back seat of Inspector Carrillo's marked Federal Protective Service Homeland Security Police vehicle. *See* Hr'g Tr.

4

65:11-13, 72:5-23. This alleged crime was separate and independent from the initial assault with the bottle and was initiated in officers' presence after the illegal detention. In accordance with *Waupekenay*, the evidence of the "separate, independent crime initiated against police officers in their presence after an illegal … arrest will not be suppressed under the Fourth Amendment." *Cf. Waupekenay*, 973 F.2d at 1538.

Although the Government did not respond to the attenuation issue in its response, Defendant anticipated the issue when it raised it in its motion to suppress. The hearing also developed facts surrounding the spitting by Defendant on Inspector Carrillo, which are relevant to the factors set forth by the Tenth Circuit in *Waupekenay*. Moreover, Defendant had an opportunity to address the implications of the *Waupekenay* case in its response to the motion for clarification. For all the foregoing reasons, the Court finds good cause to consider the fruit-of-the-poisonous tree issue herein and to reconsider and limit the scope of its prior suppression order.

**IT IS THEREFORE ORDERED** that

1. The United States' "Motion for Clarification of the Court's Memorandum Opinion and Order (Doc. 42)" (**ECF No. 43**) is **GRANTED**.

2. The Court will not suppress evidence of the separate, independent alleged crime of spitting on Inspector Carrillo committed in the officers' presence after Defendant's illegal seizure.

_____
**UNITED STATES DISTRICT JUDGE**